**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KOBA KVIRIKASHVILI, and all others similarly situated<br><br>Plaintiff(s)<br><br>v.<br><br>UNITED STATES FIRE INSURANCE COMPANY; BLUE STAR CLAIMS, LLC; and DOES 1 through 10, inclusive,<br><br>Defendant(s) | Civil Action No.<br><br>Jury Trial Demanded |

Koba Kvirikashvili ("Plaintiff"), on behalf of himself and all others similarly situated, alleges as follows:

## I. INTRODUCTION

1. Subrogation is a legal right that allows an insurance company to recover money it has paid out on account of a loss.

2. Upon information and belief, despite various anti-subrogation enactments, Defendants (as defined herein) sought to unlawfully encumber and obtain proceeds of personal injury claims throughout the United States under the guise of subrogation regarding hundreds, if not thousands, of individuals.

3. This is an action brought to stop Defendants from continuing their conduct and to require disgorgement of their unlawful gains.

4. Absent this action, Defendants' inappropriate attempts would continue unabated.

## II. THE PARTIES

5. Plaintiff is an adult individual citizen of the Commonwealth of Pennsylvania.

Plaintiff resides in Philadelphia County.

6. Defendant United States Fire Insurance Company ("USFIC") is a corporation organized under the laws of the State of Delaware, with its principal place of business at 5 Christopher Way, Eatontown, NJ 07724. It is authorized to transact insurance business in all states and the District of Columbia.

7. Defendant Blue Star Claims, LLC f/k/a Blue Star Claims Management, LLC ("Blue Star Claims") is a limited liability company organized under the laws of the State of Arizona, with its principal place of business at 21001 North Tatum Boulevard Suite 1630-646 Phoenix, AZ 85050, and mailing address at 8825 N. 23rd Avenue Suite 100 Phoenix, AZ 85021.

8. On its website, Blue Star Claims describes itself as follows:




https://www.bluestarclaims.com/about-us/ (last visited on September 23, 2025).

9. Plaintiff is unaware of the names and capacities of those defendants sued as DOES 1 through 10, but will seek leave to amend this Complaint once their identities become known to Plaintiff. Upon information and belief, Plaintiff alleges that at all relevant times each defendant, including the DOE defendants 1 through 10, was the officer, director, employee, agent, representative, alter ego, or co-conspirator of each of the other defendants, and in engaging in the

conduct alleged herein was in the course and scope of and in furtherance of such relationship.

10. Unless otherwise specified, Plaintiff will refer to all defendants collectively as "Defendants" and each allegation pertains to each Defendant.

11. At all times material hereto, Defendants acted and/or failed to act in person and/or through duly authorized agents, servants, workmen, and/or employees, acting within the scope and course of their authority and/or employment for and/or on behalf of Defendants.

## III. JURISDICTION AND VENUE

12. This Honorable Court has jurisdiction pursuant to 28 U.S.C. § 1332, 28 U.S.C. § 1367, and the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq.

13. The Eastern District of Pennsylvania is the proper venue for this litigation, because:

a. Plaintiff is a resident of the Eastern District of Pennsylvania and Defendants' wrongful conduct was directed to and was undertaken within the territory of the Eastern District of Pennsylvania; and

b. Defendants conduct a substantial portion of their business in the Eastern District of Pennsylvania.

## IV. STATEMENT OF CLAIMS

### A. BACKGROUND

14. On December 1, 2023, Plaintiff was involved in a motor vehicle accident that caused Plaintiff to suffer from various serious physical injuries.

15. At the time of their accidents, Plaintiff was making a delivery for DoorDash, Inc. ("DoorDash") – "a technology company that facilitates food delivery through its online platform [that] connects customers, restaurants, and delivery drivers."[1]

---

[1] Magana v. DoorDash, Inc., 343 F.Supp.3d 891, 895 (N.D.Cal. 2018).

16. DoorDash delivery drivers are independent contractors.

17. Independent contractors serving as delivery drivers, such as DoorDash delivery drivers and Plaintiff, are not entitled to receive benefits under the applicable workers' compensation laws when making deliveries.

18. Instead, they receive benefits under a so-called "Occupational Accident" insurance policy, issued by USFIC and administered by Blue Star Claims ("USFIC Policy").

19. After his accident, Plaintiff made claims against the USFIC Policy and went to various medical providers for evaluation and treatment of his injuries.

20. Thereafter, Blue Star Claims sent a letter to Plaintiff, dated December 29, 2023, wherein Blue Star Claims identified itself as "the Third Party Administer of claims on behalf of [USFIC]" with respect to the USFIC Policy.

21. In that correspondence, Blue Star Claims, on behalf of USFIC, wrote that Plaintiff's "claim is being accepted for occupational accident benefits for injuries sustained on 12/1/2023."

22. This letter further stated:

> [P]lease note the Right of Recovery/Subrogation clause in your policy. This clause states that you must refund to us any overpayment of benefits that occurs because a third party was liable to pay certain of your expenses due to a wrongful act, negligence or omission. This refund will **equal the amount we paid** . . . If the refund is due from another person or organization, you must help us obtain the refund. Please refer to the Policy and contact us with any questions.

(Emphasis added).

23. USFIC then made payments to various medical providers on account of Plaintiff's injuries.

24. On or about February 16, 2024, Blue Star Claims, on behalf of USFIC, sent a letter to Plaintiff's counsel (via certified mail), with a subject line "RIGHT OF RECOVERY NOTICE

(INITIAL).”

25. In relevant part, this letter stated:

> Dear Kalikhman & Rayz:
>
> We are the Third Party Administer of claims on behalf of United States Fire Insurance Company in reference to this accident claim. We represent US Fire in the collection of the Right of Recovery for amounts paid for the occupational injury claims. We are seeking reimbursement for all medical, expense and indemnity costs paid out on this claim.
>
> Please consider this our Initial Right of Recovery Notice. We are seeking reimbursement for all medical, expense and indemnity costs paid out on this claim. Our total amount paid to date is $**2,829.95**. ***Please Note: This figure is not final.** We will continue to update you on a regular basis.

26. Approximately three months later, on May 23, 2024, Blue Star Claims, on behalf of USFIC, sent another correspondence to Plaintiff’s counsel with a subject line “RIGHT OF RECOVERY NOTICE (UPDATE).”

27. In relevant part, this letter stated:

> Dear Kalikhman & Rayz:
>
> We are the Third Party Administrator of claims on behalf of United States Fire Insurance Company in reference to this accident claim. We represent United States Fire Insurance Company in the collection of the Right of Recovery for amounts paid for the occupational injury claims. We are seeking reimbursement for all medical, expense and indemnity costs paid out on this claim.
>
> Please consider this an update to our Right of Recovery amount for all medical, expense and indemnity costs paid out on this claim. Our total amount paid to date is $31,805.27. ***Please Note: This figure is not final.** We will continue to update you on a regular basis.

28. On January 7, 2025, Blue Star Claims, on behalf of USFIC, sent another correspondence to Plaintiff’s counsel, with a subject line “RIGHT OF RECOVERY NOTICE/REQUEST FOR REIMBURSEMENT (FINAL).”

29. In relevant part, this letter stated:

> Dear Kalikhman & Rayz:
>
> We are the Third Party Administrator of claims on behalf of United States Fire Insurance Company in reference to this accident claim. We represent United States Fire Insurance Company in the collection of the Right of Recovery for amounts paid for the occupational injury claims. We are seeking reimbursement for all medical, expense and indemnity costs paid out on this claim.
>
> Our total amount paid is **$41,183.01** and we are requesting immediate reimbursement of this amount. ***This is our final figure and therefore our final demand.**

30. In effect, by way of the correspondence identified above, Blue Star Claims, on behalf of USFIC, sought to subrogate any payments made on behalf of Plaintiff from the money Plaintiff would recover.

31. By September of 2025, Plaintiff settled his claim against the third party responsible for his accident, as well as all additional insurance companies providing coverage for Plaintiff's injuries incurred in the accident at issue.

32. After receipt of the settlement proceeds on September 19, 2025, the sum of $45,000.00 has been escrowed on account of the demands for payment sent on behalf of USFIC.

**B. USFIC POLICY**

33. On October 22, 2024, by way of an email, Plaintiff's counsel requested from Blue Star Claims "a **complete copy** of the underlying [USFIC P]olicy effective on the date of loss, including but not limited to any and all rights of subrogation language with accompanying certificates." (Emphasis supplied).

34. The following day, an adjuster from Blue Star Claims (with a title "Subrogation Lead") responded by providing a copy of a 34-page, "Blanket Occupational Accident Certificate" ("Certificate"). A true and correct copy of this document is marked and attached hereto as Exhibit "1."

35. The Certificate proclaims that it "is a legal contract between [y]ou and [u]s to provide coverage for Occupational Accidents" that applies to "[a]ll [i]ndependent [c]ontractors not domiciled in California performing [c]overed [a]ctivities for DoorDash," but that "THIS IS NOT WORKERS COMPENSATION INSURANCE."[2]

36. The Certificate also states that "[n]o benefits are payable under this Certificate for

[2] Exhibit "1," pp. 1, 3, 4.

any loss for which [y]ou may claim benefits as an employee under any workers' compensation, occupational disease or similar law."[3]

37. The "General Provisions" of the Certificate declare it to be a fully integrated agreement:

> **GENERAL PROVISIONS**
>
> **Entire Contract:** This Certificate (including any endorsements, riders or amendments), constitute the entire contract between the parties. Any statement made by You in the Application shall, in the absence of fraud, be deemed a representation and not a warranty. No statement made by any Covered Person whose eligibility has been accepted by Us shall void the insurance or reduce the benefits under this Certificate or be used in defense to a claim hereunder in the absence of fraud.
>
> **Changes:** To be valid, any change or waiver must be in writing. It must be signed by our President or Secretary and be attached to this Certificate. No agent has authority to change or waive any part of this Certificate.

Exhibit "1," p. 21.

38. In relevant part, the Certificate also contains the following provision:

> **Right of Recovery/ Subrogation**
>
> You must refund to Us any overpayment of benefits that occurs because a third party was liable to pay certain of Your expenses due to a wrongful act, negligence or omission. The refund will equal the amount We paid under this Certificate. If the refund is due from another person or organization, You must help Us obtain the refund. Our right to be reimbursed has priority over Your right to be made whole. This means that Our right of recovery applies even if Your entire loss has not been compensated. However, the amount of Our recovery will be reduced by a proper share of Your legal fees and Your expenses needed to obtain the refund.
>
> We have the right to pursue a refund or recovery even if You do not do so. This is called subrogation. You must help Us use this right when requested. Our right of subrogation applies even if Your entire loss has not been compensated.

Exhibit "1," p. 22.

39. The Certificate further provides:

[3] Id., p. 19.

> **Conformity With State Law**
>
> Any provision of this Certificate which, on its effective date, is in conflict with the statutes of the state in which the Covered Person resides on such date is hereby amended to conform to the minimum requirements of such statutes.

Exhibit "1," p. 23.

## C. PENNSYLVANIA'S ANTI-SUBROGATION REGIME

40. Effective since October 1, 1984, the Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S. § 1701 et seq., "is a comprehensive legislation that imposes mandatory obligations applicable to all automobile insurance providers in Pennsylvania."[4]

41. "The MVFRL was enacted as a means of insurance reform to reduce the escalating costs of purchasing motor vehicle insurance in our Commonwealth."[5]

42. It "is construed liberally to afford the greatest possible coverage to injured claimants."[6]

43. At the time of its enactment, Section 1720 of the MVFRL provided:

> In actions arising out of the maintenance or use of a motor vehicle, there shall be **no right of subrogation** or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits, benefits available under [S]ection 1711 (relating to required benefits), 1712 (relating to availability of benefits) or 1715 (relating to availability of adequate limits) or benefits paid or payable by a program, group contract or other arrangement whether primary or excess under [S]ection 1719 (relating to coordination of benefits).[7]

---

[4] Mid-Century Insurance Co. v. Werley, 114 F.4th 200, 203 (3rd Cir. 2024)(cleaned up).

[5] Danko v. Erie Insurance Exchange, 630 A.2d 1219, 1222 (Pa. Super. 1993); see also Burstein v. Prudential Property and Casualty Ins. Co., 809 A.2d 204, 207 (Pa. 2002); Paylor v. Hartford Ins. Co., 640 A.2d 1234, 1235 (Pa. 1994).

[6] Danko, 630 A.2d at 1222.

[7] 75 Pa.C.S. § 1720(emphasis added).

44. The expansive language of Section 1720 attempted to preclude subrogation for "all potential benefits which may have been too numerous to mention."[8]

45. In 1990, the U.S. Supreme Court found that that Section 1720 was pre-empted by the Federal Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., with regard to payments made under self-insured health plans.[9]

46. In 1993, the legislature repealed certain sections of the MVFRL, including the provisions of Section 1720 related to workers' compensation benefits, thereby "reinstat[ing] an employer's right of subrogation with respect to workers' compensation benefits in actions arising out of motor vehicle accidents, which had previously existed . . . prior to the MVFRL's enactment."[10]

47. In 2006, the Pennsylvania Supreme Court exempted payments made by a health maintenance organization ("HMO") on behalf of its member from the purview of Section 1720.[11]

48. Effectively then, other than for payments made under an ERISA health plan, a workers' compensation policy, or an HMO membership agreement, for over thirty years now, Section 1720 has prohibited subrogation against any recovery for injuries sustained a motor vehicle collision.[12]

49. This is consistent with the overall purpose of the MVFRL.

---

[8] Fulmer v. Commonwealth, 647 A.2d 616, 619 (Pa. Cmwlth. 1994).

[9] See FMC Corp. v. Holiday, 498 U.S. 52 (1990).

[10] Oliver v. City of Pittsburgh, 11 A.3d 960, 962 (Pa. 2011).

[11] See Wirth v. Aetna U.S. Healthcare, 904 A.2d 858 (Pa. 2006).

[12] See, e.g., Alpini v. Workers' Compensation Appeals Board, 294 A.3d 307 (Pa. 2023)(holding that an employer had no subrogation claim for salary paid to an injured employee under a Pennsylvania statute that replaced workers' compensation benefits for public employees).

50. Specifically, by disallowing subrogation, Section 1720 precludes "boarding" – a practice that inflates damages in personal injury lawsuits.

51. Thereby, Section 1720 decreases the overall financial exposure of automobile insurers, which keeps the cost of automobile insurance lower.[13]

**D. DEFENDANTS' WRONGFUL CONDUCT**

52. Plaintiff was injured in a motor vehicle accident.

53. USFIC then paid various medical providers on account of Plaintiff's injuries and made payments to Plaintiff for his lost income.

54. These payments were not made under an ERISA health plan, a workers' compensation policy, or an HMO membership agreement.[14]

55. Nonetheless, USFIC, through Blue Star Claims, is attempting to unlawfully subrogate Plaintiff's recovery and receive payment for anything USFIC paid out on account of Plaintiff's injuries that were sustained in a motor vehicle accident.

56. The MVFRL explicitly forbids anyone to seek such reimbursement from the proceeds that Plaintiff may obtain with regard to his motor vehicle accident.

57. Therefore, the written notices sent by Blue Star Claims, on behalf of USFIC, that demand payments are unlawful, false, and misleading.

58. Hence, the actions of Blue Star Claims and USFIC (collectively, "Defendants") clearly violate the MVFRL, as well as the applicable regulations of the Unfair Insurance Practices, 31 Pa. Code § 146.1 et seq.; specifically, those pertaining to "Misrepresentation of policy

---

[13] See Burstein, supra; Paylor, supra.

[14] See, e.g., Atlantic Specialty Insurance Company v. Newson, 672 F.Supp.3d 1346, 1349-50 (N.D.Ga. 2023)(acknowledging that an "occupational accident" insurance policy is not a workers' compensation policy).

provision:"

a. "An insurer or agent may not fail to fully disclose to first-party claimants pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented;" and

b. "An insurer or agent may not fail to fully disclose to first-party claimants benefits, coverages or other provisions of an insurance policy or insurance contract when the benefits, coverages or other provisions are pertinent to a claim."[15]

59. Other jurisdictions also restrict subrogation with regard to motor vehicle accidents.

60. Indeed, along with Pennsylvania, the states of Arizona, Connecticut, Georgia, Kansas, Missouri, New York, New Jersey, North Carolina, and Virginia do not allow subrogation under any circumstances (collectively, the "Non-subrogation States").

61. Given that Blue Star Claims asserts that it "has been in business since 2004 specializing in Occupational Accident claims and Workers' Compensation oversight,"[16] there is little doubt that Defendants were (or should have been) aware that they have no right to subrogate in the circumstances at issue.

62. Upon information and belief, Defendants have no procedures to restrict their subrogation efforts and to avoid violation of applicable laws.

63. Upon information and belief, Defendants systematically and as a matter of practice ignore the anti-subrogation statutes, enactments, and rulings.

64. Upon information and belief, Defendants systematically and as a matter of practice

[15] 31 Pa. Code § 146.4(a), (b).

[16] https://www.bluestarclaims.com/about-us/ (last visited on September 23, 2025).

make hundreds (if not thousands) of unlawful demands for subrogation.

65. Plaintiff avers that Defendants' conduct, as described herein, was not limited to the circumstances described herein, but was, and is, habitual, systematic, ongoing, and unrelenting in Defendants' business model and practice.

66. Plaintiff avers that the purpose of Defendants' behavior described herein (as well as their day-to-day business operation) is to obtain additional revenue and profit for Defendants' business enterprise.

67. Plaintiff and members of the Class(es) have been (and will continue to be) financially damaged due to Defendants' conduct, as set forth herein.

68. Plaintiff and members of the Class(es) have suffered and will continue to suffer actual damages due to Defendants' conduct, as set forth herein.

69. Plaintiff further states that Defendants' practices continue unabated and will continue well beyond the end of this case, for which Defendants have and/or will reap hundreds of thousands of dollars in unearned ill-gotten gains that they have no right to.

## E. CLASS ACTION ALLEGATIONS

70. Plaintiff brings this action on behalf of himself and class(es) of similarly-situated individuals pursuant to Fed. R. Civ. P. 23.

71. Plaintiff brings this action as a class action for Defendants' unlawful efforts to collect funds for which they are not legally entitled.

72. Specifically, Plaintiff brings this action as a nationwide class action pursuant to Fed.R.Civ.P.23(b)(2) defined as:

> All natural persons who worked as independent contractor delivery drivers in a Non-subrogation State and have coverage offered and/or administered by Defendants under the Certificate ("Injunctive Class").

73. In addition, Plaintiff brings this action as a nationwide class action pursuant to Fed.R.Civ.P.23(b)(3) defined as:

> All natural persons who worked as independent contractor delivery drivers in a Non-subrogation State and have coverage offered and/or administered by Defendants under the Certificate for whom Defendants sought reimbursement of funds paid by one or more of the Defendants during the statutory period covered by this Complaint ("Declarative Class").

74. Finally, Plaintiff brings this action as a Pennsylvania state-wide class action pursuant to Fed.R.Civ.P.23(b)(3) defined as:

> All natural persons who worked as independent contractor delivery drivers in the Commonwealth of Pennsylvania and have coverage offered and/or administered by Defendants under the Certificate for whom Defendants sought reimbursement of funds paid by one or more of the Defendants during the statutory period covered by this Complaint ("PA Class").

75. The Injunctive Class, Declarative Class, and PA Class are collectively referred to herein as the "Classes."

76. The number of individuals in the respective Classes are so numerous that joinder of all members is impracticable. The exact number of members of the Classes can be determined by reviewing Defendants' records. Plaintiff is informed and believes and thereon alleges that there are over a hundred individuals in each of the defined Classes.

77. Plaintiff will fairly and adequately protect the interests of the Classes and has retained counsel that is experienced and competent in class action and insurance litigation.

78. Plaintiff has no interests that are contrary to, or in conflict with, members of the Classes.

79. Importantly, the Injunctive Class can be certified under Fed.R.Civ.P.23(b)(2), because Defendants have "acted or refused to act on grounds that apply generally to the class"

with respect to Defendants' assertion that they can seek subrogation under the terms of the Certificate.

80. Accordingly, "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed.R.Civ.P.23(b)(2).

81. With respect to the Declarative Class and PA Class, a class action suit, such as the instant one, is superior to other available means for fair and efficient adjudication of this lawsuit. The damages suffered by individual members of the Classes may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Classes to individually seek redress for the wrongs done to them.

82. A class action is, therefore, superior to other available methods for the fair and efficient adjudication of the controversy. Absent these actions, members of the Classes likely will not obtain redress of their injuries, and Defendants will retain the proceeds of their unlawful actions.

83. Furthermore, even if any member of the Classes could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system. Concentrating this litigation in one forum will promote judicial economy and parity among the claims of individual members of the Classes and provide for judicial consistency.

84. There is a well-defined community of interest in the questions of law and fact affecting the Classes as a whole. The questions of law and fact common to each of the Classes predominate over any questions affecting solely individual members of the action. Among the common questions of law and fact are:

a. Whether Defendants ignored and/or misrepresented the applicable provisions of the insurance policy at issue;

b. Whether Defendants ignored and/or misrepresented the applicable law on the issue of subrogation;

a. Whether Defendants are prohibited from seeking to subrogate any amounts at issue in this case; and

b. Whether Plaintiff and the members of the Classes have sustained damages and, if so, the proper measure of damages.

85. Plaintiff's claims are typical of the claims of members of the Classes.

86. Plaintiff and members of the Classes have sustained damages arising out the same wrongful and uniform practices of Defendants.

87. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its continued maintenance.

## F. CAUSES OF ACTION

### COUNT I
**Declaratory Judgment Action**
**(On Behalf of the Injunctive Class)**

88. Plaintiff hereby incorporates all facts and allegations of this pleading by reference, as if fully set forth at length herein, and asserts this cause of action in the alternative to others.

89. An actual controversy exists between Plaintiff and Defendants herein in that, while Defendants are expected to deny such allegations, Plaintiff assert that:

a. Defendants' attempts to subrogate are contrary to the MVFRL and overall public policy of the Commonwealth;

b. Defendants' attempts to subrogate are contrary to the laws of the Non-subrogation States' laws, enactments, rulings, and overall public policy;

c. Defendants' attempts to subrogate are unlawful; and

d. Defendants' actions wrongfully interfere with Plaintiff's rightful possession, use, and enjoyment of his proceeds.

90. Plaintiff requests that a judicial determination and declaration be made that would set forth the parties' rights and obligations, as necessary and appropriate, to avoid a multiplicity of actions and in order for the respective parties to ascertain their rights and obligations with respect to the funds at issue.

**COUNT II**
**Breach of Contract**
**(On Behalf of the Declarative Class)**

91. Plaintiff hereby incorporates all facts and allegations of this document by reference, as if fully set forth at length herein, and asserts this cause of action in the alternative to others.

92. Defendants entered into a binding and enforceable contract, pursuant to which Defendants agreed to issue payments on Plaintiff's and the Declarative Class's behalf.

93. The terms of the parties' written agreement require Defendants to conform their actions to applicable state law. These terms of the contracts are uniform across the Declarative Class.

94. Defendants have failed to do so, since, in violation of state law, Defendants sought reimbursement of payments they issued on Plaintiff's and the Declarative Class's behalf.

95. These actions require Plaintiff and members of the Declarative Class to pay Defendants and/or escrow funds Defendants have claimed to be owed, which unlawfully restricts Plaintiff's and the Declarative Class's rights to their money and delay the resolution of their claim for damages.

96. Therefore, Defendants are in breach of the parties' agreement.

**COUNT III**
**Conversion**
**(On Behalf of the Declarative Class)**

97. Plaintiff hereby incorporates all facts and allegations of this pleading by reference, as if fully set forth at length herein, and asserts this cause of action in the alternative to others.

98. By demanding that Plaintiff and members of the Declarative Class pay Defendants and/or escrow funds Defendants have claimed to be owed, Defendants wrongfully exerted dominion over Plaintiff and members of the Declarative Class's funds, denying them rights thereto and, thereby, delaying the timely resolution of their claims.

99. These actions are unlawful, because Defendants have no right to said funds.

100. The foregoing conduct of Defendants constitutes an unlawful conversion of Plaintiff's and members of the Declarative Class's money.

**COUNT IV**
**Bad Faith**
**(On Behalf of the PA Class)**

101. Plaintiff hereby incorporates all facts and allegations of this pleading by reference, as if fully set forth at length herein, and asserts this cause of action in the alternative to others.

102. Section 8371 of the MVFRL, 42 Pa.C.S. § 8371, entitled "Actions on insurance policies," provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

103. An insurer violates this statute when it fails to "accord the interest of its insured the same faithful consideration it gives its own interest."[17]

104. For instance, "bad faith" exists where the insurer does not properly investigate the underlying circumstances of the loss, misrepresents the benefits or coverages available under an insurance policy, or acts in a manner that delays a timely resolution of a claim.[18]

105. Ultimately, to prevail on a claim pursuant to Section 8371, a plaintiff must demonstrate that: (a) there was no reasonable basis for the insurer's behavior; and (b) the insurer knew or recklessly disregarded the fact that it was acting in an unreasonable manner.[19]

106. Section 8371 unequivocally applies to automobile insurance policies.[20]

107. Defendants through their representatives, agents, and/or employees have breached their duties to act in good faith by, *inter alia*:

a. Ignoring the applicable law on the issue of subrogation, including, the MVFRL;

b. Ignoring the applicable provisions of the insurance policy at issue;

c. Misrepresenting the applicable law on the issue of subrogation, including the MVFRL;

d. Misrepresenting the applicable provisions of the insurance policy at issue;

e. Making unlawful demands for payment of amounts that they were never

---

[17] Cowden v. Aetna Cas. & Sur. Co., 134 A.2d 223, 228 (Pa. 1957).

[18] See, e.g., Hollock v. Erie Ins. Exchange, 842 A.2d 409 (Pa. Super. 2004); O'Donnell v. Allstate Insurance Co., 734 A.2d 901 (Pa. Super. 1999).

[19] See Rancosky v. Washington National Insurance Co., 170 A.3d 364 (Pa. 2017).

[20] See, e.g., Brown v. Progressive Insurance Co., 860 A.2d 493 (Pa. Super. 2004).

entitled to; and/or

f. Preventing timely resolution of insurance claims.

108. Given their alleged experience in handling and oversight of work-related insurance claims, there is little doubt that Defendants were (or should have been) aware that the applicable laws prohibited subrogation under the circumstances at issue.

109. Regardless, it has long been recognized that ignorance of the law is never an excuse.[21]

110. Because of Defendants' unlawful behavior, they obtained additional revenue and profit that they were otherwise not entitled to.

111. In short, Defendants unequivocally placed their own self-interest above those of their insured.

112. Defendants' actions constitute willful and/or outrageous conduct towards their insured.

113. For the reasons set forth above, Defendants violated Section 8371.

114. Therefore, Defendants are liable for statutory interest, punitive damages, attorneys' fees, and costs to Plaintiff and the PA Class.

## V. CLAIM FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for:

(a) Designation of this action as a class action pursuant to Fed. R. Civ. P. 23;

(b) Designation of Plaintiff as representative of the Injunctive Class;

(c) Designation of Plaintiff as representative of the Declarative Class and PA

[21] See, e.g., Faudel v. Phoenix Insurance Co., 1818 WL 2111 *40 (Pa. 1818)(declaring – "Let it be understood that ignorance of the law can form no excuses for the assured, because all who trade to any country take upon the knowledge of the laws of that country. . . .").

Class;

(d) Designation of Plaintiff's counsel as class counsel for the Classes;

(e) A Declaration that Defendants have sought to unlawfully seek subrogation when it is prohibited by law;

(f) An Order enjoining Defendants from any further violations of the law;

(g) Actual damages;

(h) Interest;

(i) Punitive damages;

(j) Attorneys' fees and costs; and

(k) Such other relief as the Honorable Court shall deem just and appropriate.

## VI. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all issues so triable.

**(SIGNATURES ON THE FOLLOWING PAGE)**

Date: September 23, 2025

Respectfully submitted,
**KALIKHMAN & RAYZ, LLC**

Lawrence Kalikhman, Esquire
1051 County Line Road, Suite "A"
Huntingdon Valley, PA 19006
Telephone: (215) 364-5030
Facsimile: (215) 364-5029
E-mail: lkalikhman@kalraylaw.com

**LYNCH CARPENTER, LLP**
Gerald D. Wells, III
Robert J. Gray
1760 Market Street, Suite 600
Philadelphia, PA 19103
Telephone: (267) 609-6910
Facsimile: (267) 609-6955
Email: jerry@lcllp.com
Email: rob@lcllp.com

Counsel for Plaintiff(s) and the Proposed Classes